[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of M.G.B.-E.,* Slip Opinion No. 2018-Ohio-1787.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1787

IN RE ADOPTION OF M.G.B.-E. ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of M.G.B.-E.,* Slip Opinion No. 2018-Ohio-1787.]

*Adoption—R.C. 3107.07(A)—A probate court must consider the existence of pending parenting matters when determining whether an exception to the requirement of parental consent to adoption applies.*

(No. 2017-0039—Submitted November 21, 2017—Decided May 9, 2018.)

APPEAL from the Court of Appeals for Clinton County, No. CA2016-06-017, 2016-Ohio-7912.

_____

FRENCH, J.

{¶ 1} This appeal addresses a probate court's authority to proceed on an adoption petition—specifically, to determine whether parental consent is required for the adoption—when preexisting matters concerning the parenting of the child are pending in another court. Appellant, D.H. ("Father"), asks this court to hold

broadly that a probate court "may not proceed with an adoption petition if any pending parenting matter is proceeding in another court." We reject Father's proposition of law, but we hold more narrowly that a probate court must consider the existence of pending parenting matters when determining whether an exception to the requirement of parental consent to adoption applies.

### *Facts and procedural background*

{¶ 2} The legal issues raised in this appeal are relatively straightforward. But the factual record—replete with contradictory testimony, allegations of abuse from both sides, regular failures to comply with court orders, and a 13-year history of animosity between two parents—complicates our analysis.

### *The adoption petitions and consent requirements*

{¶ 3} Appellee, D.E. ("Stepfather"), filed petitions in the Clinton County Probate Court to adopt M.G.B.-E. and R.S.B.-E., the minor children of his wife, V.B.-E. ("Mother"), and Father, her ex-husband. Under R.C. 3107.06, a petition to adopt a minor who was born to married parents may not be granted without the written consent of both the mother and the father of the minor, unless an exception set forth in R.C. 3107.07 applies. Stepfather's adoption petitions state that Father's consent is not required because Father failed without justifiable cause to provide more than de minimis contact with the children for at least a year immediately preceding the filing of the adoption petitions. *See* R.C. 3107.07(A) ("Consent to an adoption is not required of * * * [a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption petition"). Father objected to the adoption petitions and disputed the applicability of the R.C. 3107.07(A) exception to the R.C. 3107.06 parental-consent requirement.

{¶ 4} The probate court held a hearing on the necessity of Father's consent. Witnesses included Mother; Father; Stepfather; Father's current wife, S.H. ("Stepmother"); and Father and Stepmother's babysitter. Much of the evidence concerned Mother and Father's acrimonious relationship, dating from before their 2004 divorce.

*The divorce decree and subsequent parenting litigation*

{¶ 5} Father and Mother were married for about five years and, during that marriage, had two children—a son, R.S.B.-E., and a daughter, M.G.B.-E. In the course of their divorce proceedings, Mother accused Father and his brothers of sexually abusing the children. A November 2004 final divorce decree granted Mother custody of the children and granted Father parenting time. The decree incorporated the parties' agreement that the children were not to be left unsupervised with a particular paternal uncle.

{¶ 6} Mother impeded Father's parenting time from the outset. Between October 2004 and April 2006, as evidenced by more than 25 police reports filed by Father, Mother regularly refused to deliver one or both of the children to Father for parenting time in accordance with the final decree. In May 2005, Father moved for temporary and permanent custody of the children, alleging that Mother had repeatedly denied him parenting time and that Mother and the children's maternal grandfather were physically and mentally abusing the children. In 2005 and 2006, Father filed at least five motions to hold Mother in contempt.

{¶ 7} Subsequent to the divorce decree, Mother made additional allegations of sexual abuse of the children by Father to Highland County Children Services, Montgomery County Children Services, and the Warren County Sheriff's Office. A letter dated June 17, 2005, from Montgomery County Children Services reports no indication of "anything improper, neglectful or abusive [having] occurred during visits with paternal family members."

**{¶ 8}** In June 2006, Mother unilaterally cut off parenting time between Father and the children after the children returned from parenting time with Father with, according to Mother, physical evidence of and verbal statements by M.G.B.-E. regarding sexual abuse. Mother took M.G.B.-E. to her pediatrician and to Cincinnati Children's Hospital with complaints of vaginal and anal bleeding and allegations of abuse. An examination revealed no physical signs of abuse. Mother also contacted the Warren County Sheriff's Office. Both children reported sexual abuse to Warren County detectives.

**{¶ 9}** Based on her June 2006 allegations, Mother obtained an ex parte civil protection order from the Highland County Common Pleas Court in September 2006 that prohibited Father from having contact with Mother or the children. Father denied Mother's allegations and again moved for temporary custody of the children in November 2006. Mother and Father agreed to dismiss the protection order in March 2007.

**{¶ 10}** Also in March 2007, a domestic-relations magistrate held a hearing on the parties' motions that had been filed between March 2005 and November 2006. The parties agreed that the magistrate would address only Father's most recent motion for contempt (regarding parenting time during the summer of 2006), Mother's motion to restrict Father's parenting time to supervised visits, and Father's motion for in camera interviews of the children. The parties agreed to dismiss all other pending motions.

**{¶ 11}** Before the domestic-relations court issued a decision on the pending motions, Mother successfully applied to the Highland County Probate Court to have the children's last names changed from Father's last name to her maiden name. Despite the parties' continuing litigation in the domestic-relations court, Mother's applications stated that Father's address was unknown and was not ascertainable with reasonable diligence. Father was not personally served with the applications, and he claims that he received no notice of the applications whatsoever.

4

{¶ 12} In September 2007, the domestic-relations court ruled on the motions argued at the March 2007 hearing. As part of her consideration, the magistrate interviewed both children and reviewed a guardian-ad-litem report, psychological evaluations and the Highland County Children Services' file regarding the allegations of sexual abuse. The court denied Father's motion for contempt. Although the magistrate noted that the allegations were unsubstantiated, she found that Mother reasonably denied Father parenting time pending the investigation of those allegations. With respect to Mother's motion to restrict Father's parenting time, the court ordered that Father's "parenting time shall be limited pending therapy" with one of three named therapists or a mutually agreed-upon therapist "for the parents and children to help the children to transition to spending time with" Father. The court expected that "within 6 months the children should have transitioned into parenting alone with" Father.

{¶ 13} The parties had not commenced counseling by the time the court held a review hearing in April 2008, but the parties agreed to contact a therapist and schedule counseling. In September 2008, however, the court dismissed the matter for want of prosecution. Father admits that arranging counseling "fell through the cracks."

*2008-2014: Father's absence*

{¶ 14} For at least six years after September 2008, when the domestic-relations court dismissed the parenting matter for lack of prosecution, the children did not receive any voicemail, telephone call, text message, e-mail, card, letter or gift from Father. Father testified that from 2010 until at least August 2014, he had no way of contacting the children because he did not know where they were living and because he did not have a working telephone number for Mother. Mother changed addresses and telephone numbers multiple times without informing the domestic-relations court or Father, as required by the final divorce decree. Father did see R.S.B.-E. once during that period, at a church picnic in July 2010, but he

claims that he was unable to speak with R.S.B.-E., because Mother "haul[ed] [R.S.B.-E.] away in the other direction."

*2014-2015: Father learns of the children's whereabouts and attempts to see them*

{¶ 15} In August 2014, Father learned that the children were attending Wilmington High School after Stepmother saw the children at a football game. Father and Stepmother's babysitter, who was a cheerleader for the opposing team, spoke to R.S.B.-E. and learned that he would be wrestling for Wilmington High School that winter. Father, Stepmother, their children, and the babysitter subsequently attended a wrestling match in which R.S.B.-E. was participating. There, the babysitter learned that R.S.B.-E. would be running track in the spring. The babysitter did not mention Father in her conversations with R.S.B.-E. Father did not make personal contact with R.S.B.-E. at the wrestling match.

{¶ 16} In April 2015, Father, Stepmother, their children, and the babysitter attended one of R.S.B.-E.'s track meets. When Mother noticed Father, she contacted the Wilmington police department. She wanted the police to ask Father to leave; she believed that keeping R.S.B.-E. safe required him having no contact with Father. The police officer, however, simply asked Father to avoid contact with Mother or R.S.B.-E. Father and Stepmother attended another track meet two days later, but they testified that Stepfather immediately removed R.S.B.-E. from the track after his race to avoid any contact between Father and R.S.B.-E. Father attended two additional track meets in May 2015, but R.S.B.-E. was not present. On one of those occasions, Mother, Stepfather, and Mother's father were present despite R.S.B.-E.'s absence. Stepmother claims that Stepfather and Mother's father followed her vehicle when she left the meet. Stepfather denies that claim but admits that he was "parked down the street just keeping my eyes on things and just observing."

*Father's motion to reestablish parenting time*

{¶ 17} On May 14, 2015, Father filed a motion in the domestic-relations court to reestablish parenting time. The same day, Father, Stepmother, and their children, along with a process server, attended a track meet to see R.S.B.-E. and to serve Mother with Father's motion. After finding that neither R.S.B.-E. nor Mother was at the track meet, the family accompanied the process server to Mother's house and parked about two blocks away. The process server approached the house to serve the motion. Stepfather, who was observing from across the street, called 9-1-1 and reported a group of people, including Father, approaching the house. Stepfather also called R.S.B.-E., who was inside the house at the time, and told him to run out the back door, where Stepfather picked him up and drove to a nearby parking lot.

{¶ 18} After stopping Father and the process server and learning of their purpose, the police directed the process server to Stepfather's location, and the process server delivered Father's motion to reestablish parenting time. Stepfather filed his adoption petitions in the probate court four days later.

*Concurrent proceedings in the probate and domestic-relations courts*

{¶ 19} The probate court held that pursuant to R.C. 3107.07(A), Father's consent to Stepfather's adopting the children was not required because Father failed without justifiable cause to provide more than de minimis contact with them for at least one year prior to the filing of the adoption petition. The court "put a lot of weight [o]n the fact that the father 'dropped the ball' " following the September 2007 domestic-relations court order "and did not provide or pay for or pursue counseling" to reinstate visitation. Clinton C.P., Probate Div., Nos. 20155012 and 20155013 (May 19, 2016). The probate court's decision did not mention Father's pending motion to reestablish parenting time or the proceedings in domestic-relations court that preceded the probate court's hearing.

**{¶ 20}** While Stepfather's adoption petitions were pending in the probate court, the domestic-relations court held hearings on Father's motion to reestablish parenting time and issued orders granting Father limited parenting time. Proceedings in the domestic-relations court remain ongoing.

**{¶ 21}** The Twelfth District Court of Appeals affirmed the probate court's decision that Father's consent was not required and held that the probate court had jurisdiction to proceed on the adoption petitions despite the pending parenting matter in the domestic-relations court. 2016-Ohio-7912, ¶ 49, 69. Father appeals that judgment.

### *Analysis*

**{¶ 22}** Probate courts have original, exclusive jurisdiction " 'to hear and determine an adoption proceeding relating to a minor child notwithstanding the fact that the custody of such child is at the time within the continuing jurisdiction of a divorce court.' " *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, ¶ 9, quoting *In re Adoption of Biddle*, 168 Ohio St. 209, 152 N.E.2d 105 (1958), paragraph two of the syllabus. Father, however, asserts that "[t]he probate court may not proceed with an adoption petition if any pending parenting matter is proceeding in another court." *See* 150 Ohio St.3d 1407, 2017-Ohio-6964, 78 N.E.3d 908. We reject Father's broad proposition of law.

**{¶ 23}** Father makes three arguments in support of reversal. First, he urges us to construe our precedent, and particularly the line of cases stemming from *Pushcar*, in favor of the natural parent and to hold that any parenting proceeding pending in a court with continuing jurisdiction over a child precludes a probate court from exercising jurisdiction over an adoption petition concerning that child. Second, he urges us to apply the jurisdictional-priority rule to preclude the probate court's exercise of jurisdiction. Lastly, he urges us to recognize a necessity for determining pending parenting matters before an adoption petition may be granted.

8

{¶ 24} We address Father's arguments out of order, beginning with his argument regarding the jurisdictional-priority rule.

*Jurisdictional-priority rule*

{¶ 25} "As between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." *State ex rel. Phillips v. Polcar*, 50 Ohio St.2d 279, 364 N.E.2d 33 (1977), syllabus. The jurisdictional-priority rule applies when cases in multiple courts of concurrent jurisdiction involve the same parties and when either the causes of action are the same or the cases present part of the same whole issue. *State ex rel. Otten v. Henderson*, 129 Ohio St.3d 453, 2011-Ohio-4082, 953 N.E.2d 809, ¶ 24, 29.

{¶ 26} Father argues, based on *Otten*, that the jurisdictional-priority rule precludes the probate court from proceeding with Stepfather's adoption petitions because Father first invoked the domestic-relations court's jurisdiction with his motion to reestablish parenting time. But *Otten* does not support Father's argument. *Otten* involved competing adoption petitions, filed by the same petitioner and relating to the same child, in the probate courts of different counties. The petitions involved the same parties and precisely the same issue—whether the consent of the child's natural father was required for the adoption. *Id.* at ¶ 28-29. This court held that the court whose jurisdiction the petitioner first invoked had exclusive jurisdiction to determine the adoption petition. *Id.* at ¶ 36.

{¶ 27} The jurisdictional-priority rule does not apply here. First, unlike the probate courts in *Otten*, the probate court and the domestic-relations court in this case are not courts of concurrent jurisdiction. The probate court has exclusive jurisdiction over the adoption petitions, *Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, at ¶ 9, and the domestic-relations court has exclusive jurisdiction over Father's application to reestablish parenting time, *see Broadnax v.*

*Bowling*, 1st Dist. Hamilton No. C-030502, 2004-Ohio-1114, ¶ 15-16. Application of the jurisdictional-priority rule would purport to give the domestic-relations court—the court whose jurisdiction was first invoked—the opportunity to adjudicate "the whole issue and to settle the rights of the parties," *Phillips* at syllabus, but the domestic-relations court lacks subject-matter jurisdiction to adjudicate adoption petitions. Second, the two proceedings here do not involve the same parties. Finally, they do not involve the same cause of action or present part of the same whole issue. The jurisdictional-priority rule, therefore, does not preclude the probate court from proceeding on Stepfather's adoption petitions.

{¶ 28} We now turn to Father's remaining arguments, which rely in large part on *Pushcar*.

Pushcar

{¶ 29} *Pushcar* reached this court on appeal from an appellate court's reversal of a probate court's determination that a stepparent adoption could proceed without consent from the child's legal father. The legal father, who lived with but was not married to the child's mother at the time of the birth, had signed the child's birth certificate. *Pushcar* at ¶ 1. The legal father moved the juvenile court to enforce the unwed parents' agreement regarding visitation and support, but the juvenile-court rules required genetic testing to establish paternity before the court could rule on the motion. *Id.* at ¶ 2-4. While the legal father's motion was pending in the juvenile court, the mother married and her new husband filed a petition in the probate court to adopt the child. *Id.* at ¶ 4-5.

{¶ 30} The probate court in *Puschcar* held that pursuant to R.C. 3107.07(A), the legal father's consent was not required for the adoption because he had not provided for or communicated with the child for at least a year. 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, at ¶ 5-6. The Eleventh District reversed and held that the probate court should have refrained from exercising its jurisdiction over the adoption proceeding until the juvenile court had adjudicated

the parenting matter. *Id.* at ¶ 7. It also held that the probate court could not make the necessary determination regarding the need for the legal father's consent under R.C. 3107.07(A) until there had been a judicial determination of paternity. *Id.* This court affirmed the Eleventh District's judgment. *Id.* at ¶ 14.

{¶ 31} We explained in *Pushcar* that courts must strictly construe any exception to the parental-consent requirement in favor of the nonconsenting parent and that the petitioner in an adoption proceeding bears the burden of proving by clear and convincing evidence the satisfaction of an exception to the general requirement that an adoption may not proceed without parental consent. *Id.* at ¶ 11, 13. The petitioner in *Pushcar* could not meet his burden of proving satisfaction of the R.C. 3107.07(A) exception to the parental-consent requirement unless and until there had been a judicial ascertainment of paternity—which was the very issue that remained pending in the juvenile court. *Id.* at ¶ 14. Separately, we held in *Pushcar*, "When an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child." *Id.* at syllabus.

{¶ 32} Father makes two arguments based on *Pushcar* and on some of our more recent cases that discuss it. First, he argues that the *Pushcar* syllabus requires a probate court to refrain from proceeding with an adoption when any "issue concerning parenting" is pending in another court. Second, he argues that like the determination of paternity in *Pushcar*, the determination of his right to parenting time is a necessary antecedent to the probate court's determination of Stepfather's adoption petitions.

*Application of* Pushcar

{¶ 33} The broad language in *Pushcar*'s syllabus—"When an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child," 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647—seems to support Father's first argument. And

in two cases decided in 2010, this court stated, "It is clear that we did not intend our holding or analysis [in *Pushcar*] to be restricted to parenting issues implicated by R.C. 3107.07(A). Rather, our use of general language shows that we intended the holding to apply to all parenting issues pending in a juvenile court." *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351, 933 N.E.2d 236, ¶ 8; *In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, 933 N.E.2d 245, ¶ 8. Like *Pushcar*, both of those cases involved questions of paternity pending in juvenile court. *P.A.C.* at ¶ 2-3; *G.V.* at ¶ 2-3.

{¶ 34} Since *P.A.C.* and *G.V.*, however, this court has retreated from this broad reading of *Pushcar*. We have stated that the context of *Pushcar* "manifestly indicates that the court intended 'parentage,' " not "parenting," in its syllabus. *In re G.T.B.*, 128 Ohio St.3d 502, 2011-Ohio-1789, 947 N.E.2d 166, ¶ 10, fn. 2; *see also State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Court of Common Pleas, Probate Div.*, 150 Ohio St.3d 230, 2016-Ohio-7382, 81 N.E.3d 380, ¶ 38 ("*Pushcar* required the probate court to refrain from proceeding while there was a question of *parentage*—i.e., paternity—pending in the juvenile court" [emphasis sic]), citing *G.T.B.* at ¶ 10 and fn. 2. "Parentage," which refers to "[t]he quality, state or condition of being a parent," *Black's Law Dictionary* 1288 (10th Ed.2014), is a more limited term than "parenting." Father asks this court to "pull back" from its statement in *G.T.B.*, later cited in *Allen Cty.*, and to hold that *any* pending "parenting" matter in another court requires a probate court to refrain from proceeding on an adoption petition. We decline to do so.

{¶ 35} The cases in which we have held that a probate court must refrain from proceeding on an adoption petition have involved the issue of paternity, which affected the probate court's *ability* to rule on the concurrent adoption petitions. *See Pushcar*; *P.A.C.*; *G.V.* But when a parenting issue pending in a juvenile or domestic-relations court does not affect a probate court's ability to determine the statutory prerequisites for adoption, we have not required the probate court to

12

refrain from exercising its exclusive jurisdiction over adoption proceedings. That was the case in *Allen Cty.*, which involved a jurisdictional conflict between a juvenile court that retained continuing jurisdiction over a dependent and abused child and a probate court that was considering a petition by the child's foster parents to adopt that child, with the mother's consent. This court held that the probate court had jurisdiction to consider the adoption petition despite the ongoing juvenile-court proceedings regarding permanent custody. *Id.* at ¶ 41. We noted that the statute governing the juvenile court's jurisdiction implicitly recognized the probate court's jurisdiction to conduct adoption proceedings while custody proceedings were pending in the juvenile court. *Id.* at ¶ 34.

**{¶ 36}** We also stated in *Allen Cty.* that our holding in that case was consistent with our decision in *Pushcar*. *Allen Cty.* at ¶ 37. The factor that distinguished *Pushcar* from *Allen Cty.* was the *Pushcar* probate court's inability to rule on the adoption petition without a decision on the factual question of paternity that was pending in the juvenile court. We explained that "the point in *Pushcar* was that pursuant to the adoption statutes, the probate court could not proceed with the adoption without the consent of the putative father, and only the juvenile court could decide the question of the child's paternity." *Allen Cty.* at ¶ 37. We read *Pushcar* as requiring the probate court to refrain from acting until the juvenile court had determined the child's paternity, because until that had occurred, the probate court could not determine whether the father's consent was required. *Allen Cty.* at ¶ 37. There is no similar impediment to the probate court's exercise of jurisdiction here; the probate court is able to determine, without any finding by the domestic-relations court, whether Father failed without justifiable cause to have more than de minimis contact with the children for at least a year prior to the filing of the adoption petitions, so as to render Father's consent to the adoptions unnecessary. For these reasons, we reject Father's proposition of law.

**{¶ 37}** But that does not end our inquiry. We must still consider what impact, if any, Father's motion to reestablish parenting time and the parties' proceedings on that motion in the domestic-relations court should have on the probate court's proceedings and its analysis of whether Father's consent to the adoptions is required under R.C. 3107.07(A).

*Probate court must consider pending parenting proceedings*

**{¶ 38}** Under R.C. 3107.07(A), Father's consent to the adoptions of his children is not required if the probate court finds by clear and convincing evidence that he "has failed without justifiable cause to provide more than de minimis contact with" his children for at least one year immediately preceding the filing of the adoption petitions. Stepfather—the petitioner who asserts that Father's consent is not required—has the burden of proving the applicability of R.C. 3107.07(A) by clear and convincing evidence. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), paragraph four of the syllabus.

**{¶ 39}** Even if a parent has completely failed to communicate with his children during the statutory period, his consent to adoption will still be required if there exists justifiable cause for the failure. *Id.* at 367. The burden of proving a lack of justifiable cause remains on the petitioner in the adoption proceeding. *Id.* at 368 ("No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable"). Typically, a noncustodial parent has justifiable cause for failing to communicate when the custodial parent significantly interferes with or significantly discourages communication. *Id.* at 367-368.

**{¶ 40}** The probate court must strictly construe R.C. 3107.07(A) in favor of Father to protect his rights as a natural parent. *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976). And strictly construing R.C. 3107.07(A) in favor of Father requires the probate court to take into account Father's efforts to reestablish parental rights and responsibilities through the domestic-relations court

14

during the year preceding the filing of the adoption petitions, as well as Mother's efforts to impede Father's contact with the children.

**{¶ 41}** In an earlier case with similar facts, the Twelfth District held that a parent's filing of a motion for parenting time under a domestic-relations court's continuing jurisdiction precluded the application of R.C. 3107.07(A). *In re Adoption of A.J.B*, 12th Dist. Butler No. 2008-12-306, 2009-Ohio-2200, ¶ 27. The court stated:

> It would be a gross miscarriage of justice to allow [the stepfather], with knowledge of the father's pending petition [for parenting time], to seek adoption without consent and extinguish the biological father's parental rights by virtue of [the stepfather's] five-day-old marriage [to the child's mother]. Further, despite the fact that she has raised A.J.B. alone, it would be equally impermissible to allow the mother to receive notice of the biological father's intent to assume parental responsibility and preemptively terminate his parental rights due to her marriage, when the father in this case is pursuing his parental responsibilities through the proper procedure.

*Id.* at ¶ 26.

**{¶ 42}** Although this case presented the Twelfth District with a nearly identical scenario, the court reached the opposite conclusion without addressing its prior holding.

**{¶ 43}** The probate court did not consider Father's pending motion to reestablish parenting time with his children in determining whether Father's consent to their adoption was required. In fact, the probate court's decision does not even mention Father's pending motion or the domestic-relations court's proceedings on that motion. The Twelfth District acknowledged Father's efforts to

reestablish parenting time but stated that resolution of Father's parenting motion "has no bearing on whether he failed without justifiable cause to provide more than de minimis contact with the children in the year immediately preceding the filing of the adoption petition." 2016-Ohio-7912, at ¶ 48. But strictly construing R.C. 3107.07(A) in Father's favor, and remaining cognizant that parents facing the termination of their parental rights must be afforded every protection the law allows, *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), we conclude that Father's efforts to enforce his parental rights, prior to the filing of Stepfather's adoption petitions, are relevant.

{¶ 44} Father could undoubtedly have done more to protect and nurture his relationship with his children. He admits that he did not arrange counseling in accordance with the September 2007 order of the domestic-relations court. And although he knew where Mother and the children were living until early 2010, he made no attempt after 2008 to contact the children or assert his parental rights. But the record also demonstrates Mother's history and ongoing pattern of impeding Father's opportunities to develop and maintain a relationship with the children, reaching back to the time of the parents' divorce. That history includes repeatedly failing to deliver the children to Father at a court-ordered time and place, moving multiple times without informing Father or the domestic-relations court of her new address, changing her telephone number without informing Father or the domestic-relations court, changing the children's' last names without Father's knowledge, and calling the police when Father appeared at R.S.B.-E.'s track meet.

{¶ 45} In domestic-relations court, Father and Mother continue to actively litigate the question of Father's parenting time. The probate court refused to admit evidence about the domestic-relations court's proceedings or orders despite Father's proffered testimony and exhibits demonstrating that the domestic-relations court has granted Father limited visitation with the children. "A court may take judicial notice of a finding of another court in an unrelated case," *Kirshner v.*

*Shinaberry*, 64 Ohio App.3d 536, 582 N.E.2d 22 (6th Dist.1989), and we take judicial notice of public records made available by the domestic-relations court that reveal Mother's ongoing efforts to impede Father's parenting time. For example, a magistrate has found Mother in contempt of court for interfering with Father's parenting time, and the court has stated that Mother "has actively and intentionally interfered with the children's relationship with" Father.

{¶ 46} In its brief discussion of justifiable cause, the probate court "put a lot of weight [on] the fact that the father 'dropped the ball' on the final 'order' out of Montgomery County." Clinton C.P., Probate Div., Nos. 20155012 and 20155013 (May 19, 2016). But Father's failure to engage a therapist nearly ten years ago does not, by itself, determine the question of justifiable cause. After learning that the children attended school in Wilmington, Father made efforts to reinsert himself into their lives. Facing resistance from Mother, as he has from the outset of their divorce, Father appropriately turned to the domestic-relations court with a motion to reestablish parenting time. That action should be a factor in determining whether Father's consent to the adoption of his children is required under R.C. 3107.07(A).

### *Conclusion*

{¶ 47} When a parent has filed a parenting motion in a juvenile or domestic-relations court having continuing jurisdiction over a child prior to the filing of a petition to adopt that child, the probate court must consider the parent's legal action as part of its consideration whether the parent failed without justifiable cause to have more than de minimis contact with the child during the year immediately preceding the filing of the adoption petition, under R.C. 3107.07(A). Because the probate court failed to do that here, we reverse the Twelfth District's judgment and remand this matter to the Clinton County Probate Court for further consideration, consistent with this opinion, of whether Father's consent to Stepfather's adoption petitions is required.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY, PIETRYKOWSKI, and FISCHER, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by DEWINE, J.

MARK L. PIETRYKOWSKI, J., of the Sixth District Court of Appeals, sitting for O'NEILL, J.

_____

**O'DONNELL, J., dissenting.**

{¶ 48} Respectfully, I dissent.

{¶ 49} R.C. 3107.07(A) does not require probate courts to "consider the existence of pending parenting matters," majority opinion at ¶ 1.

{¶ 50} Rather, R.C. 3107.07(A) specifies that a parent of a minor is not required to consent to an adoption if a probate court finds "by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption petition."

{¶ 51} The majority opinion, contrary to the statute, imposes a new burden on probate courts by mandating that "a probate court must consider the existence of pending parenting matters when determining whether an exception to the requirement of parental consent to adoption applies," majority opinion at ¶ 1. Although the legislature could have required probate courts to make such a determination, it chose not to do so; despite the lack of statutory authorization, the majority judicially adds this new factor for probate courts to consider in adoption cases.

{¶ 52} By doing so, the majority opinion increases the complexity of the problems faced by probate courts in adoption proceedings and resolving issues involving de minimis contact questions that arise in those proceedings. And it opens a new field of interpretation as to the meaning of the phrase "without

18

justifiable cause." Future cases will now require probate courts to consider the mere filing of motions for change of visitation, custody, or support filed in domestic relations courts, paternity matters filed in juvenile courts, and a host of other matters in juvenile and probate courts bearing on the question of parenting.

{¶ 53} These are all questions best resolved by the probate court in its consideration of whether the adoption petitioner has presented clear and convincing evidence showing that the parent failed without justifiable cause to provide more than de minimis contact with the minor per R.C. 3107.07(A). That is exactly what the probate court did in this instance, and we should affirm its judgment.

{¶ 54} Today's new standard imposes on probate judges an additional layer of review and unnecessarily complicates an already difficult situation, which will lead to all sorts of consequences not intended by the General Assembly.

{¶ 55} We should leave to the General Assembly the matter of imposing additional burdens on probate courts and resist the impulse to make the statute better by engrafting onto it judicially created burdens that will undoubtedly lead to additional litigation to further define what a "pending parenting matter" includes or does not include and that will further confuse the role of probate courts in resolving adoption proceedings.

{¶ 56} For these reasons, I would affirm the judgment of the Twelfth District Court of Appeals.

DeWine, J., concurs in the foregoing opinion.

_____

The Law Offices of Jason A. Showen, L.L.C., and Jason A. Showen, for appellee.

Rion, Rion, & Rion, L.P.A., Inc., Jon Paul Rion, Travis T. Dunnington, and Bradley D. Anderson, for appellant.

_____