[Cite as *In re J.L.*, 2019-Ohio-366.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.L. | : | APPEAL NOS. C-180453 |
| | | C-180454 |
| | : | TRIAL NOS. 2017003562 |
| | | 2017003564 |
| | : | |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Court of Common Pleas, Probate Division

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal: February 6, 2019

*Kroener, Hale & Penick* and *Angela M. Penick*, for Appellant Father,

*Robert G. Kelly,* for Appellee Stepfather.

**CUNNINGHAM, Presiding Judge.**

{¶1}   Appellant father challenges the judgments of the Hamilton County Court of Common Pleas, Probate Division, determining that father's consent was not required for the adoption of his two minor sons, J.L.1 and J.L.2, by their stepfather, the petitioner-appellee here.   Since the probate court did not lose its way in determining that there was not justifiable cause for father's failure to provide contact with his children, we affirm the probate court's judgments.

## I.   The Orders of Protection

{¶2}   Father and mother had two children during their marriage: J.L.1, born in 2002, and J.L.2, born in 2011.   They divorced in 2013.   The divorce decree designated mother as the residential parent and the legal custodian of the children. Father did not participate in the divorce proceedings.   The divorce decree noted that since father had not attended the court-mandated parenting class, the domestic relations court declined to issue any specific parenting-time orders.

{¶3}   Thus, father's visits with the children were at the discretion of mother. From 2013 until 2016, father lived in North Carolina and had only limited contact with the children, visiting them three or four times per year.   In late June 2016, father and his former girlfriend took the children for what was to be a two-week vacation.  Instead the vacation consisted of visits to the girlfriend's parents and then to father's parents.  Following an alcohol-fueled altercation at father's parents' home, the children were returned home.

{¶4}   In early August 2016, father's now-former girlfriend informed mother that father had made serious threats against mother and the children.   She reported that father had told her that he wanted to kill mother and stepfather, and had threatened to cut the brake lines of mother's vehicle, follow her in his vehicle, and report her to the police for endangering the children's lives.

{¶5} Mother, fearing for the lives of her family, sought an order of protection from the domestic relations court. The former girlfriend appeared before a magistrate with mother. On August 18, 2016, the magistrate issued an ex parte order of protection. The magistrate found that father had "recently made threats to kill [mother] and her family," and that "the protected persons are in immediate danger of domestic violence." The protected persons listed in the order included mother, stepfather, and both children. Mother had married stepfather two days previously, on August 16, 2016.

{¶6} A hearing on the protection order was scheduled for August 30, but mother had difficulty serving father with the order through the Clermont County Sheriff's Department. Mother ultimately retained a private investigator to locate father. Father later testified that he had been served with the order of protection "at the beginning of September 2016."

{¶7} Now represented by counsel, father entered into a Consent Agreement and Domestic Violence Civil Protection Order on September 27, 2016. The terms of the consent agreement required father to stay away from and refrain from any contact with mother and stepfather for a five-year period. The children were not identified as parties protected by the order. Those portions of the order pertaining to father's parental rights and visitation were left blank. The order also provided that father was not to cause any other person to do any act prohibited to him. Father and his counsel signed the consent agreement at most 26 days after service of the ex parte order.

## II. Stepfather's Petitions for Adoption Without Consent

{¶8} On August 18, 2017, one year after the entry of the ex parte order of protection, stepfather filed the petitions from which these appeals derive, seeking the adoption of J.L.1 and J.L.2 without the consent of father. The petitions alleged that

father had not supported or contacted his children in the prior year and thus his consent was not required under R.C. 3107.07(A).

{¶9} The matter was referred to a magistrate, who held a hearing on the issue of whether father's consent was required. Father, mother, stepfather, the children's paternal grandmother, and father's former girlfriend testified at the February 2018 consent hearing. Father was represented by counsel at the consent hearing and at all subsequent proceedings.

{¶10} Mother and father's former girlfriend each recounted the threats that father had made against mother's family in the summer of 2016. Mother and stepfather stated that father had had no contact with the children, including email or texting, since early August 2016. Mother had permitted visits with the children by father's parents. Father's parents' last visit was an unannounced visit at mother's home in December 2016 or January 2017 to deliver Christmas presents to the children. Mother felt threatened by the unannounced visit and asked the grandparents to leave and to call before coming again.

{¶11} Father admitted that he had last spoken to his children face-to-face in July 2016, and that he had last texted the older child in August 2016. Father admitted knowing, during the entire period at issue, where mother and the children lived. Their home was within a five-minute drive of his workplace.

{¶12} Although father denied that he had threatened mother and her family, he acknowledged that he had not contested either the ex parte or consent-agreement orders of protection. He thought that it would be better for all the parties if he did not contest the orders. He stated that he had entered into the consent agreement on the advice of his attorney. Although the consent agreement signed by father and his counsel did not list the children as protected parties, father testified that he thought that any contact with the children would violate the order. He claimed that his attorney had not advised him to the contrary. While acknowledging that he had no

4

contact with the children, father claimed that he did not want to abandon his children and would not give his consent to their adoption by stepfather.

{¶13} The magistrate took the matter under submission and issued a detailed, ten-page decision. She found that the look-back period, for purposes of R.C. 3107.07(A), ran from August 18, 2016, through August 18, 2017, the one-year period immediately preceding the filing of stepfather's adoption petitions. The magistrate concluded that because father had provided considerable support to the children in the year since the filing of the petitions for adoption, those allegations in stepfather's petitions were without merit.

{¶14} Next, the magistrate found that it was "uncontroverted" that father had had no contact with the children since the beginning of the look-back period. She noted that the initial ex parte order had identified the children as protected parties, thus proscribing contact with them. The magistrate concluded that this was a significant interference with father's contact during the ex parte period. In determining the length of the ex parte period, the magistrate had made no finding regarding when father had been served with the ex parte order commencing the period of proscribed contact. Rather, the magistrate simply calculated the time between issuing of the ex parte order and entering the consent agreement.

{¶15} The magistrate also determined that during the period following the execution of the consent agreement, mother had not significantly interfered with father's contact with the children. Mother and the children remained at their home for the entire look-back period, yet father did not visit the children or send cards or letters. While father had the email address of the older child, he sent no emails during the period. The magistrate found that father's parents had made their unannounced visit, not at father's behest, but "to open lines of communication with [mother] so that they could see their grandchildren." The magistrate also found that father had taken no steps to complete the domestic relations court's parenting class

and had not filed post-decree motions seeking modification of the custody order or parenting-time order.

{¶16} Moreover, the magistrate saw little justification for father's belief that his children were protected parties under the consent agreement, thus prohibiting him from contacting them. The children were not listed as protected persons. The magistrate concluded that father's ignorance of the legal impact of a document that he and his counsel had signed, did not provide justification for his failure to contact the children.

{¶17} Finally, the magistrate determined that father's inability to contact his children during the ex parte period did not constitute a cumulative significant interference with his ability to contact his children over the course of the entire statutory look-back period.

{¶18} Father timely filed objections to the magistrate's decision. He argued that his failure to contact his children during the one-year look-back period was justified for two reasons: first, the ex parte order of protection barred him from contact with the children before September 27, 2016, and second, mother's actions during the entire period significantly interfered with his ability to see his children.

{¶19} After holding a hearing at which no new evidence was adduced, the probate court, in a four-page entry, overruled father's objections and adopted the magistrate's factual findings and legal conclusions. The court agreed with the magistrate that while there may have been some impediments to father's contact with the children during "the approximately" 40-day ex parte period, the impediments did not amount to a significant interference over the entire look-back period. Thus, the court found that father's consent was not required and remanded the matter to the magistrate for a determination of whether adoption by stepfather was in the children's best interests.

{¶20} Father then brought these appeals. A probate court's finding that a parent's consent to the adoption of his biological children is not required is a final appealable order. *In re Adoption of Greer*, 70 Ohio St.3d 293, 638 N.E.2d 999 (1994), paragraph one of the syllabus.

{¶21} On appeal, the two issues raised in father's objections form the basis of his two interrelated assignments of error: that the probate court erred in determining that father's consent for adoption was not required when (1) he had been prohibited from contacting the children during the ex parte order-of-protection period, and (2) mother had significantly interfered with his ability to contact the children during the consent-agreement period.

### III. A Two-Step Analysis for Determining Whether Consent Is Required

{¶22} Adoption proceedings terminate fundamental rights of natural parents. Thus, the consent requirement in R.C. 3107.07(A) must be strictly construed to protect natural parents. *In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, 933 N.E.2d 245, ¶ 6. R.C. 3107.07(A) provides that consent to adoption is not required of

> [a] parent of a minor * * * [who] has failed without justifiable cause *
>
> * * to provide more than de minimis contact with the minor or to
>
> provide for the maintenance and support of the minor as required by
>
> law or judicial decree for a period of at least one year immediately
>
> preceding * * * the filing of the adoption petition[.]

*See In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 15; *see also In re Adoption of B.I.*, 2017-Ohio-9116, 101 N.E.3d 1171, ¶ 8 (1st Dist.). Because R.C. 3107.07(A) is written in the disjunctive, either a failure to contact or a failure to provide support for the one-year time period will obviate the need for a parent's consent to adoption. *See In re Adoption of McDermitt*, 63 Ohio St.2d 301, 304, 408 N.E.2d 680 (1980).

{¶23} In applying R.C. 3107.07(A), the probate court must first determine whether a parent has failed to provide more than de minimis contact with his children. This is a factual question consigned to the probate court's sound discretion. *In re Adoption of M.B.* at ¶ 21 and 23. Here, it is unrebutted that father failed to have any contact, much less de minimus contact, with his children during the statutory look-back period.

{¶24} But even if a parent has completely failed to communicate with his children during the statutory period, his consent to adoption will still be required if there is justifiable cause for that failure. *See In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, ¶ 39. Thus upon a finding that a parent has failed to contact his children, the probate court must determine whether justifiable cause for the failure has been proven by clear and convincing evidence. *In re Adoption of M.B.* at paragraph two of the syllabus. The question of whether justifiable cause for the failure to contact the children has been proven in a particular case "is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *Id.* at ¶ 30; *see In re Adoption of B.I.* at ¶ 8 .

{¶25} In reviewing a weight-of-the-evidence challenge, this court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *see In re Adoption of C.J.C.*, 9th Dist. Wayne No. 15AP0040, 2016-Ohio-4909, ¶ 13. But in weighing the evidence, we must always be mindful that the magistrate and the probate court were in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony. *Eastley* at ¶ 21; *see In re Adoption of B.G.F.*, 3d Dist. Shelby No. 17-18-

06, 2018-Ohio-5063, ¶ 26.  Although father couched his assignments of error in terms of the probate court's abuse of its discretion in determining that he lacked justifiable cause for failing to contact his children, this court reviews that determination only for whether the probate court lost its way in reaching it.

{¶26} The probate court determines justifiable cause "by weighing the evidence of the natural parent's circumstances for the statutory period[.]"  *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph three of the syllabus; *see In re Adoption of B.I.* at ¶ 8.  In reaching this determination, the probate court may examine the one-year period "*as a whole* (and not just a portion thereof)[.]"  (Emphasis in the original.)  *In re Adoption of Bovett* at paragraph three of the syllabus; *see In re Adoption of Kilbane*, 130 Ohio App.3d 203, 207, 719 N.E.2d 1012 (8th Dist.1998).

{¶27} According to the Ohio Supreme Court, "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for * * * failure to communicate[.]"  *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), paragraph three of the syllabus; *see In re Adoption of M.G.B.-E.* at ¶ 40.

{¶28} While a probate court must strictly construe R.C. 3107.07(A) in favor of the parent at jeopardy of losing his rights as a natural parent, the Ohio Supreme Court has noted that "strictly construing R.C. 3107.07(A)" requires the probate court to take into account the natural parent's "efforts" to make contact during the look-back period "as well as [the custodial parent's] efforts to impede * * * contact with the children."  *In re Adoption of M.G.B.-E.* at ¶ 40.  This consideration of the natural parent's efforts to reestablish contact reflects the General Assembly's intent in amending R.C. 3107.07(A) in 2009.  The former statute required a finding only that the parent had failed to "communicate" with the minor child for the one-year period.

"By changing the standard from 'communicate,' which could imply a single contact, to 'more than de minimis contact,' which seems to imply more than a single contact, the Legislature indicated its intent to require more effort from the parent to have contact and communication with the child." *In re J.D.T.*, 2012-Ohio-4537, 978 N.E.2d 602, ¶ 9 (7th Dist.).

## IV. No Significant Interference During The Look-Back Period

{¶29} The probate court's finding that father failed to have any contact, much less de minimis contact, with his children during the look-back period is amply supported in the record. But father argues that his failure to contact his children was justified.

{¶30} We first review the probate court's determination that father's failure to communicate with his children during the period between the September 27, 2016 adoption of the consent-agreement order of protection and the end of the look-back period on August 18, 2017, was not justified. This period comprised 89 percent of the entire statutory period.

{¶31} The probate court's determination that mother did not significantly interfere with father's contact with his children during this period is also amply supported in the record. Father had voluntarily entered into the consent agreement, which did not name the children as protected parties. *Compare In re Adoption of B.A.A.*, 9th Dist. Wayne No. 16AP0073, 2017-Ohio-8137, ¶ 5 (a no-contact civil stalking protection order naming mother and child as protected parties was justifiable cause for failing to contact). He had been represented by counsel at the consent-agreement proceeding and at the consent-for-adoption hearing. *Compare id.* at ¶ 4 (father appeared pro se at hearing on the protection order). Father's claimed ignorance of the legal impact of the consent agreement did not relieve him from his obligation to contact his children. *See In re Adoption of Kuhlmann*, 99

Ohio App.3d 44, 50, 649 N.E.2d 1279 (1st Dist.1994); *see also In re Adoption of S.M.H.*, 2d Dist. Greene No. 2013 CA 59, 2014-Ohio-45, ¶ 15.

{¶32} Mother and children continued to live at their home. Father had means of contacting the older child. Mother did not attempt to hide the children from father. *Compare Holcomb*, 18 Ohio St.3d at 363, 481 N.E.2d 613 (noting that custodial parent had refused to give telephone number or address to parent seeking to contact). Yet father did not attempt to contact the children.

{¶33} Neither did he use other persons or entities to contact mother to arrange visits with the children. *See In re Adoption of M.F.*, 9th Dist. Summit No. 27166, 2014-Ohio-3801, ¶ 24 (father employing court-approved means to contact his children). Father never sought visitation through the domestic relations court or through attempts to modify the consent agreement to provide for parenting time. *Compare In re Adoption of B.A.A.* at ¶ 17 (a parent's attempt to modify a civil stalking protection order so that he could reinitiate visitation with his child was evidence supporting justifiable cause).

{¶34} The consent agreement, issued on September 27, 2016, only protected mother and stepfather. Father's ability to visit with the children was not proscribed by the order. His ability to seek a parenting time order from the domestic relations court was not precluded by the order. Father's only explanation was his mistaken belief that the consent agreement forbad contact with the children. Father made no efforts to contact the children after August 2016. After September 27, 2016, nothing prevented him from doing so.

{¶35} The probate court's determination that mother's actions had little impact on father's ability to contact the children during the consent-agreement period is well supported. The probate court did not lose its way in making the determination that father's failure to contact the children subsequent to the issuance of the consent agreement was not justified.

{¶36} Next, the probate court determined that father's inability to contact the children during the ex parte period was not a significant interference by mother with contact between father and the children, when viewed over the course of the entire look-back period.

{¶37} We note that while the probate court stated that the ex parte period lasted "approximately" 40 days, the record reveals that it was, at most, 26 days in duration. Father had testified before the magistrate that he had been served with the ex parte order of protection and thus had learned that it barred contact with his children as protected parties only "at the beginning of September 2016." Thus, any justification under the order for failure to contact the children could have lasted, at most, the 26 days between September 1 and September 27, 2016. That period comprised 7 percent of the look-back period.

{¶38} The magistrate included in her findings of fact the finding that mother had sought the ex parte order of protection out of her concern over father's threats of violence, her knowledge that he could be a violent person, and her concern for the safety of her family. The domestic relations court magistrate agreed, made similar findings, and issued the order of protection. Thus, the record supports the determination that the ex parte order of protection was a result of father's own threats and conduct and not of mother's intentional efforts to interfere with father's contact with the children. A failure to contact subsequent to the issuance of an order of protection is not justified where father's own actions were the cause of the order. *See In re Adoption of I.M.M.*, 5th Dist. Ashland No. 16 COA 018, 2016-Ohio-5891, ¶ 36; *see also In re Adoption of S.M.H.*, 2d Dist. Greene No. 2013 CA 59, 2014-Ohio-45.

{¶39} The probate court weighed father's minimal efforts to reestablish contact with his children during the statutory look-back period as well as mother's limited actions to interfere or discourage that contact. *See In re Adoption of M.G.B.-*

12

*E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, at ¶ 40. In light of father's failure to contact his children immediately before, during, or after the ex parte period, the probate court properly examined the look-back period as a whole. *See In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919, at paragraph three of the syllabus. Therefore, the probate court did not lose its way in making the determination that father's failure to contact the children, over the course of the whole look-back period, was not excused by justifiable cause. The first and second assignments of error are overruled.

### V. Conclusion

{¶40} Having overruled father's two assignments of error, we affirm the judgments of the probate court.

Judgments affirmed.

**MYERS** and **DETERS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.