[Cite as *In re Adoption of R.A.H.*, 2021-Ohio-1667.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

IN THE MATTER OF: THE
ADOPTION OF R.A.H.

:
:
:    Appellate Case No. 2020-CA-32
:
:    Trial Court Case No. 2020-AD-05
:
:    (Appeal from Probate Court)
:
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of May, 2021.

. . . . . . . . . . .

MARK M. FEINSTEIN, Atty. Reg. No. 0065183, P.O. Box 657, Urbana, Ohio 43078
    Attorney for Appellant Stepfather

D.S., Sidney, Ohio 45365
    Appellee Father, Pro Se

. . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Stepfather appeals from the Champaign County Family Court's order finding that consent was required from R.A.H.'s biological father (Father) before Stepfather could adopt R.A.H. For the reasons that follow, the trial court's order will be reversed, and the matter will be remanded for further proceedings.

## I.      Factual and Procedural Background

**{¶ 2}** Father and Mother are the biological parents of R.A.H., who was born in February 2014. Mother and Father were never married.[1] Mother became romantically involved with Stepfather in 2015. Mother, Stepfather, and R.A.H. began living in the same home that same year. Mother and Stepfather had another child in 2016 and were married in October 2019.

**{¶ 3}** On February 22, 2017, Mother sought a protection order against Father in the Champaign County Family Court; an ex parte protection order was issued that same day. On March 2, 2017, following a full hearing, a domestic violence civil protection order was entered against Father.[2] The order named Mother and R.A.H as the protected parties.

**{¶ 4}** On March 28, 2018, Father filed a motion seeking to modify the protection order so that he could have parenting time. A hearing on the motion was conducted on January 31, 2019. The Family Court denied the motion for modification and parenting

---

[1] According to Stepfather's brief, the issues of parental rights and responsibilities were decided by the Champaign County Juvenile Court, which is part of the Family Court.

[2] The protection order is not part of the record before us. Thus, the facts available to us are gleaned from Stepfather's appellate brief and the transcript of the September 30, 2020 consent hearing.

time on March 12, 2019. In the order, the court noted that Father continued to use illegal drugs and had not participated in any treatment for domestic violence or anger management. Finally, the order stated Father's social media posts indicated he continued to possess firearms. There is nothing in this record to demonstrate that Father appealed this decision.

{¶ 5} On May 7, 2020, Stepfather filed a petition seeking to adopt R.A.H. Based upon Father's lack of contact with R.A.H. in the preceding year, the petition asserted that Father's consent to the adoption was not required under R.C. 3107.07(A). A pretrial conference was held on August 11, 2020, at which time Father refused to consent to the adoption. Thus a hearing on the necessity of consent was conducted on September 30, 2020. During the hearing, it was conclusively established that Father had had no contact with R.A.H. during the year preceding the filing of the petition for adoption. However, Father testified that his failure to have contact was solely based upon the protection order prohibiting such contact.

{¶ 6} Following the hearing, the Family Court entered an order concluding that Father's consent was required for the adoption to proceed. In reaching this conclusion, the court found that the protection order "constitute[d] justifiable cause for the father to not have contact with the child during the relevant one-year period."

{¶ 7} Stepfather appeals.

## II. Analysis

{¶ 8} Stepfather asserts the following two assignments of error:

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION

BY FINDING THAT A BIOLOGICAL FATHER'S CONSENT WAS REQUIRED, WHEN IT IS UNDISPUTED THAT HE DID NOT HAVE CONTACT WITH THE CHILD DURING THE RELEVANT ONE-YEAR PERIOD AND DID NOT HAVE CONTACT WITH THE CHILD DUE TO HIS OWN WRONGDOING AND BAD BEHAVIOR.

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY NOT CONSIDERING THE TOTALITY OF THE CIRCUMSTANCES, AS OPPOSED TO ONLY ONE FACTOR, IN DETERMINING THAT THE CONSENT OF THE BIOLOGICAL FATHER WAS REQUIRED.

{¶ 9} Stepfather contends that the court erred in its conclusion that Father's consent to the adoption was required. In support, he asserts two arguments. First, Stepfather claims Father cannot "engage in wrongdoing" creating the need for a civil protection order, and "then hide behind the fact of the Civil Protection Order to justify a lack of contact." Stepfather also argues that Father's failure to rectify the problems cited by the court in its prior decision denying Father's motion to modify the protection order and for parenting time should be considered as militating against a finding of justifiable cause.

{¶ 10} The right of a biological parent to the care and custody of his or her children is fundamental and not easily extinguished. *Santosky v. Kramer*, 455 U.S. 745, 753-754, 102 S.Ct. 1388, 71 L.Ed.2d 599, 102 S.Ct. 1388 (1982). Because adoption acts to terminate this fundamental right, a biological parent must be afforded every procedural and substantive protection allowed by law before depriving the parent of the right to consent to the adoption of his child. *In re Hayes*, 79 Ohio St.3d 46, 679 N.E.2d 680

(1997); R.C. 3107.15. To that end, R.C. 3107.06 permits a court to grant a petition to adopt only if written consent has been executed by the mother and father of the child.

{¶ 11} However, exceptions to the consent requirement are set forth in R.C. 3107.07(A), which provides that consent to an adoption is not required when a court finds by clear and convincing evidence that the parent has failed, without justifiable cause, to have more than de minimus contact with the child or to provide maintenance and support for the child in the one-year period immediately preceding the filing of an adoption petition. These exceptions to the requirement of parental consent to adoption must be strictly construed in favor of the biological parent so as to protect his or her fundamental right to parent a child. *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, ¶ 40, citing *In re Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).

{¶ 12} Thus, the party petitioning for adoption has the burden to prove, by clear and convincing evidence, that one of the consent exceptions is applicable. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), paragraph four of the syllabus. Clear and convincing evidence is that which produces "in the mind of the trier of fact[ ] a firm belief or conviction as to the facts sought to be established.' " *Id.* at 368, citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1984), paragraph three of the syllabus. Once the petitioner has established by clear and convincing evidence that the biological parent has failed to have more than de minimus contact with or provide support for the child within one year of the petition filing date, the burden of going forward with evidence shifts to the biological parent to show some facially justifiable cause for the failure. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph two of the syllabus. The burden of proof, however, remains at all times with the

petitioner, who must establish the lack of justifiable cause by clear and convincing evidence. *Id.*

{¶ 13} As stated above, there is no dispute in this case that Father had no contact with R.A.H. in the year preceding the filing of the adoption petition.[3]  Thus, the issue before us is whether the probate court correctly concluded that Father had justifiable cause for his failure to have contact with his child.

{¶ 14} The term "justifiable cause" is not defined in R.C. 3107.07.   However, it has been defined as meaning "[c]apable of being legally or morally justified; excusable; defensible." (Citations omitted.)  *In re Adoption of B.I.*, 2017-Ohio-9116, 101 N.E.3d 1171, ¶ 10 (1st Dist.), *aff'd*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 10. The Ohio Supreme Court has "refused to adopt a 'precise and inflexible meaning' for 'justifiable cause,' but instead has concluded that 'the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists.' "  *In the Matter of Adoption of D.D.G.,* 2d Dist. Montgomery No. 27741, 2018-Ohio-35, ¶ 5, quoting *In re Adoption of W.K.S.*, 2d Dist. Champaign No. 2014-CA-16, ¶ 22, citing *Holcomb* at 367.   The Supreme Court has further held that an important consideration regarding justifiable cause is the parent's willingness and ability to support or contact a child.  *In re Adoption of Masa*, 23 Ohio St.3d 163, 166, 492 N.E.2d 140 (1986).   Additionally, a parent's "efforts to enforce his parental rights, prior to the filing of [a stepparent's] adoption petition" are a relevant consideration when reaching the justifiable cause conclusion.  *Adoption of M.G.B.-E.,* 154 Ohio St.3d 17, 2018-Ohio-

---

[3] There are no allegations and no facts in the record indicating that Father failed to provide support for R.A.H. during the relevant period.

1787, 110 N.E.3d 1236, ¶ 43.

{¶ 15} We review the probate court's decision under a manifest weight standard which requires us to weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the probate court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re Adoption of J.L.*, 1st Dist. Hamilton No. C-180453, 2019-Ohio-366, ¶ 25. Importantly, we must be mindful that the probate court, as the trier of fact, is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony.[4] *Id.*

{¶ 16} We turn first to Stepfather's argument that because Father's own bad behavior caused the imposition of a protection order, he cannot rely on the existence of that order as a justification for his failure to have contact with R.A.H. In support, Stepfather cites opinions from the Fifth District Court of Appeals, which hold that neither a protection order issued against, nor incarceration of, a biological parent resulting from the parent's own wrongdoing constitutes justifiable cause for a failure to have contact with the child. *See, e.g., In re Adoption of Corl*, 5th Dist. Licking No. 2004-CA-96, 2005-Ohio-736; *Askew v. Taylor*, 5th Dist. Stark No. 2004CA00184, 2004-Ohio-5504; *Frymier v. Crampton*, 5th Dist. Licking No. 2002-CA-8, 2002-Ohio-3591. We also note that the First District Court of Appeals has stated "failure to contact subsequent to the issuance of an

---

[4] We note that the Champaign County Family Court is comprised of the probate court, domestic relations court, and juvenile court and is presided over by two judges. But only Judge Reisinger has presided over the three cases related to this family under the court's salutary "philosophy of one Judge one family."

order of protection is not justified where father's own actions were the cause of the order." *J.L.*, 1st Dist. Hamilton No. C-180453, 2019-Ohio-366, ¶ 38.

{¶ 17} Conversely, the Eighth District Court of Appeals has held that when a biological parent relies on a valid court order prohibiting contact with his or her children, the parent has justifiable cause for failing to communicate. *In re Adoption of A.K.*, 2020-Ohio-3279, 155 N.E.3d 239, ¶ 20 (8th Dist,), *appeal allowed*, 160 Ohio St.3d 1495, 2020-Ohio-5634, 159 N.E.3d 273.

{¶ 18} The 5th District cases cited above by Stepfather seem to create a bright-line test that the incarceration of or the entry of a protection order against a parent eliminates the need for that parent's consent to an adoption. Similarly, the 8th District's holding in *A.K.* can be construed as creating a bright-line test that whenever a protection order is entered against a biological parent, that parent has justifiable cause for the failure to have contact with the child.

{¶ 19} We reject each approach as being overly rigid and, as such, inconsistent with the Supreme Court's refusal to adopt a precise definition of justifiable cause. Instead, we find that the better-reasoned approach is reflected by *In re Adoption of B.A.A.*, 9th Dist. Wayne No. 16AP73, 2017-Ohio-8137. In *B.A.A.*, the court ruled that, "[g]iven the specific facts surrounding the civil stalking protection order * * *, the trial court erred by concluding, as a matter of law, that [the protection order] did not constitute 'justifiable cause' for the Father's failure to have contact with B.A.A. during the relevant one-year period under R.C. 3107.07(A)." *Id.* at ¶ 19. In reaching this conclusion, the court discussed that the protection order was based upon Father's "stalking [Mother] by continuing to call and text her and show[ing] up at her residence, despite being told not

to [engage in such conduct]." *Id.* at ¶ 18. Thus, though the child was included in the protection order, Father's conduct toward the child was not the basis for its issuance. The court also discussed that Father had filed a motion to modify the protection order so that he could exercise parenting time with B.A.A., but the adoption petition was filed before the motion could be heard.

{¶ 20} Similarly, the Tenth District Court of Appeals, although affirming a probate court's finding of no justifiable cause, has indicated that a parent's voluntary actions resulting in incarceration or in the entry of a protection order are merely factors to consider when determining whether a parent has justifiable cause for a lack of contact with his child. *In re Adoption of N.T.R.,* 10th Dist. Franklin No. 16AP-589, 2017-Ohio-265, ¶ 17-18.

{¶ 21} We conclude that, when a parent's failure to have contact with the child within the relevant one-year period is based upon a protection order preventing such contact, the existence of the protection order does not necessarily provide justifiable cause for the failure to have contact and does not necessarily require a finding there is not justifiable cause for the failure. Instead, starting from the prospective that the consent requirement must be strictly constructed in the parent's favor, the trial court must consider *all* relevant circumstances and then decide the justifiable cause issue. The relevant circumstances include the facts surrounding the issuance of and the child's inclusion in the protection order, the parent's efforts, if any, to modify the protection order to obtain parenting time, and any other facts deemed relevant by the trial court.

{¶ 22} In the pending case, the probate court's decision stated that "if the Court finds that the [F]ather did not have justifiable cause for his failure to communicate with

the child[,] this Court is asking the impossible.  The Father must be unwilling to have contact, not be legally prohibited from contact."   From this, the trial court concluded that the protection order "constitute[d] justifiable cause" for the Father's failure to have contact with R.A.H.   But as we have explained, the existence of the protection order did not automatically provide justifiable cause for Father's failure to have contact with R.A.H. during the relevant timeframe.   Given this conclusion, Stepfather's first assignment of error that the court erred in finding Father's consent was required is overruled.   But the second assignment of error relating to consideration of the totality of the circumstances is sustained.   The case will be remanded to the probate court for consideration of the justifiable cause issue in a manner consistent with this opinion.

## Conclusion

{¶ 23} Having sustained Father's second assignment of error, the judgment of the Champaign County Family Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Mark M. Feinstein
D.S.
M.H.
Hon. Lori L. Reisinger